Our first case this morning is case number 418-0655. The Estate of Baillie and for the appellant we have Mr. Stoller. Is that how you pronounce your last name? All right, thank you. And Mr. Elitz. You may proceed counsel. May it please the court, your honor. This case is about the appropriate way to value a 50% undivided 50% interest in farmland for Illinois estate tax purposes. The estate's position in the case is that the rule should follow what actually happened, which is very simple. In this case, John owned an undivided 50% interest in farmland. He did not own the entire interest. After his wife, Linda, disclaimed the interest that passed through his estate according to the terms of his will to his two daughters, he received at the end equal 25% interest in the farm. This is essentially exactly the same as the other five 50% interests in farms that John owned as tenants-in-common. There's actually no difference as far as how the farms are distributed and received and owned. And, accordingly, if the facts are the same and there's a difference between the three farms John owned at 50% interest in joint tenancy and the five farms and tenants-in-common, then why should the farms be valued any differently? Counsel, let me ask you a question. Your position is that the value should be determined under Section 2033, right? That's correct. And opposing counsel is suggesting that we should be looking to 2040, right? That's correct. So, if we agree that it's under 2040, do you lose? If the interest must be valued under 2040, then the Attorney General's position is that the Young case would hold that the interest is not valued at fair market value. Right. But we don't believe the interest should be valued under 2040 because it's no longer a joint tenancy interest. But that wasn't my question. My question is, if we say it's under 2040, where does that leave you? In that case, we would have to distinguish the Young case, which says that the interest under 2040 should not be valued at fair market value. And we believe there is a reason to distinguish the Young case. But, as a general yes, interests included under 2040 are not valued at fair market value, and so we would not be permitted the discount. But, it simply begs the question of whether 2040 applies in the first place. The interest here is a tenancy in common use as a tenancy in state of debt. And this is determined on the basis of Illinois state law. Does the fact that it was held with the right of survivorship, does that impact the analysis? That's a technicality that the Attorney General is emphasizing to say that since it was originally owned by John and Glenda as a tenancy, that 2040 should apply. But when Glenda disclaimed the survivorship interest, the Illinois Probate Act says that that disclaimer is treated as Glenda predeceasing John. In other words, by the time of John's deed of debt, she's already deceased. And if Glenda's already deceased, then there's no way that her and John could own the property together as joint tenancy. That severance has already taken place. And at that time, Glenda owns her own 50% interest with John and Glenda's daughters as tenancy in common. No one's arguing that the daughters and Glenda, after the disclaimer, own the property in joint tenancy. Everyone would acknowledge that the daughters are owning their interest in tenancy in common. So as of John's deed of debt, he did not own a joint tenancy in interest. And it's that fact that controls this case. If he did own a joint tenancy, then 2040 does not apply. 2033 applies. It's simply a tenancy in common interest that's valued with all the other assets in John's estate under Section 2033. Fair market valuation applies, and the discounts are part of fair market valuation. And if there's any doubt that the Illinois Probate Act, with the doctrine of relation back, applies in the federal and Illinois estate tax consequence, the proposed regulations that set forth essentially the current federal treasury regulations as they relate to disclaimers of joint tenancy property and the property valuation rules, those proposed regulations clearly are based upon the relation back doctrine that's now included in state law. And you can tell that because those proposed regulations cite two cases. Kennedy, which is the seventh certain case based upon the Illinois disclaimer statute, the current one, not the old one. And another case called McDonald, which essentially holds exactly that. The relation back doctrine is not simply a legal fiction that applies only for descent distribution. It's an actual doctrine that controls in the federal estate tax so that the people that receive the interest as a result of the disclaimer are considered owners as of John's date of death. So if we're really concerned, like the attorney general says, that the interest can only be devalued at the date of death and not some later event. Well, the McDonald and the Kennedy cases, which are essentially the foundation of the regulations we have today. And that's the end of it. You don't have to take my word for it. That's the end of the proposed regs. They say that as of John's date of death, the dollars are already owners. And the dollars are already owners as tenants in common. So there's no way that John interests anymore as of his date of death is a joint tenancy interest because Glenn is already dead, according to the disclaimer law. And there also is a lot of doctrine that holds that state law does control the federal issue. There's a black case that says I have to paraphrase a little bit, but it says we have rejected the notion that 2040, that Congress intended 2040 to sever a joint tenancy interest. Clearly, the indication that state law applies. The Kennedy McDonald cases must say the same thing. Otherwise, they don't make any sense at all. And then you have the change in the IRS's position with respect to how do we characterize a joint tenancy property. Did Glenda receive the entire interest from the joint tenancy that was created back when they bought the farm many, many years ago? Or was there two transfers, one when she bought the farm and then another one when John died? And then clearly, based upon Kennedy and McDonald and the proposed regulations, the change in the Illinois disclaimer statute, which occurred in 1983, all of those authorities together show that the modern view is that there are two transfers, one when they bought the farm, one when John died. And so there is a span in there. John's 50% interest is an incomplete gift until John passed away because he could have taken back his 50% at any time. He could have severed the joint tenancy. He could have gave that interest to his neighbor. He could have gave it to his daughters. He could have done anything with his interest all the way up until he died. It was incomplete until then. And the court says, well, then in that case, if it's incomplete until he died, and the disclaimer relates back to before John's death, then it gets severed before his death. It's no longer a joint tenancy interest anymore at that period of time. Counsel, with regard to that particular argument and the joint tenancy being incomplete, how can something that is incomplete, you talked about two transfers, the death hasn't occurred yet, so it's not a complete thing, how can that be disclaimed if it's not yet a thing, i.e. a valid right of survivorship that was created and then upon death passes the interest? Because that makes it complete. So if you're disclaiming, the argument is disclaiming something that's not yet complete, and that is a survivor interest. But that's no different than the regulations, the examples in the federal regulations that permit this. If it wasn't for the specific treasury regulations that set forth the procedures for disclaiming that interest, then, yeah, the old rules would say, yeah, you can't do it because it's gone. But the new regulations say, well, I guess let me back up a little bit. The survivorship interest is there from the beginning, and that's what she's disclaiming. That gift of a survivorship interest, so to speak, that happened back when the tenancy was created, and that's what she's disclaiming. But the accreted portion, John's extra portion, she's disclaiming that. That separate transfer is what falls into your statements tax and fair market value rules. So if I can follow up, I asked the question in response to you referring to two transfers. So there are two transfers, and the disclaimer that we're discussing here took place in between the two acts that need to be completed to move the interest. I think there's a difference in time. The disclaimer occurred after death. By that time, I mean, there's no other way to disclaim a survivorship interest other than occurring after death. It's not possible. No statute or federal official regulation, Illinois rules don't permit that before. The disclaimer happens after death, but by this explicit language of the disclaimer statute, when a person disclaims, the disclaimer relates back to before death and terminates the joint tenancy to survivorship interest so that as of the time of death, for federal state tax purposes, it's no longer a joint tenancy property. Yes, the disclaimer has to happen after it's completed. By practicality, it can't happen before, but the legal effect of it is explicitly before death. So as of the time of death, this would be a tenancy to disclaim. And as far as federal purposes, this was not an issue, the issue that you had with respect to the state return. Is that right? That's exactly right. We have a closing letter from the IRS saying that this return is approved as is, zero tax, no issue with the attorney. The issue was never raised by the IRS. And frankly, you might be wondering why hasn't this issue come up in the past? Why is this a case that we've never considered before? We believe this is a new position taken by the Illinois Attorney General's Office that we understand must have been accepted. In fact, my co-counsel John Simpson was the attorney general for 30 years, examined the state tax return, and this issue had never been raised. We don't have evidence in the record as to practice and what's common practice on the AG side, the state side, and what's common practice for the probate practitioner. But at the risk of going outside the record here, CLE programs, has anything changed from the practitioner standpoint in terms of estate planning, the manner in which title is being held in farm real estate, the disclaimers that are being taken? Because as you say, there's no directly controlling precedent here. If something is changed, it would seem, in order for this to be a one-off, because there have always been farm owners that have passed away having title held in the manner in which title was held here with disclaimers. So you're saying the difference is the manner in which the AG has approached this situation? Yes, and you're correct. We don't have the ability to know how the attorney general's office is approaching this in the past. But what we have, the best evidence to show that the industry practice or standard has agreed with the state's position, is the secondary authority that we've offered. Those are the people in the trenches, the experts that have examined this issue before. Now, we have offered a seminar outline summary detail. It's not just the PowerPoint slides. It's a detailed summary outline of a practitioner in Florida, same federal rules, who says explicitly on our holding that when you disclaim joint tenancy property, then the interest becomes a tenancy income. And so this issue never would have arose. We believe it's the intuitive rule. It is the rule that practitioners have always believed. It matches good policy. Taxing interest at fair market value, which is what we're asking the court to hold, is not a tax break. We're asking the court to hold the value to be taxed at what it's actually worth, what's John's 50% interest actually worth. The attorney general's argument is let's tax it higher than his 50% interest is actually worth. And that's not fair to the taxpayer. It's also not intuitive because this interest is clearly an interest in his estate that passed by his will. Why would we treat it as if Lender received the entire property? Because she never received anything from John. The disclaimer is not some sort of a settlement or scheme by the taxpayers. She refused to receive this interest. She didn't get anything. It went to her daughters. And so why tax her as if she got the whole property? It never happened. And the law says she displayed, it's treated as if she's dead before John. And so why hasn't this come up? We think it's a creative argument raised for the first time by the attorney general. I can't prove that. The attorney general may have a different opinion on that. But we believe that's why it's never come up in the past. Because practitioners and the enforcer of the estate tax and the IRS, evidently, who received this return, should have reviewed it, never raised the issue with us. We believe this because it's been a non-issue until this point. And also because we believe that the federal treasury regulations are on point here. The examples 12 and 14 say, and really everywhere in the regulations, when the property is disclaimed, it goes under 2033. You'll never find anywhere in the regulations anything that says that when a property is disclaimed, it is valued under 2040. You'll never find that anywhere. And you'll never find in the attorney general's cases that they have addressed the issue of how a disclaimer impacts the analysis. Young doesn't, which is the whole basis of the attorney general's argument. Young never talks about a disclaimer. Neither do all the cases regarding per caud et non, or mine. Pardon me, I don't do very well in Latin. It's an old doctrine that's antiquated. That's kind of the issue here. None of those cases apply that doctrine in the context of a disclaimer. And if the court relies on authority that doesn't address disclaimer, we believe that it missed the issue because it changes the whole analysis. Now, there is some attempt to distinguish the regulation by the attorney general because it's either – because the examples fall under the section that talks about doing bank accounts and doing investment accounts. But if you really examine the proposed regulations, the proposed regulations don't distinguish the treatment because they're personal property. It just says that, look, the disclaimer regulation no longer relates back to before death, and the account is an incomplete gift until death. And both of those circumstances are present in John's case with respect to his 50% interest. Yes, Glenn is an interest. His 50% interest is Glenn. It's complete. But no one cares about her interest. That will get taxed in her estate someday when she passes away. But as far as John's goes, it was incomplete. It related back to before his death. And as a consequence, it lost its character in joint tenancy property. It goes into 2033 taxed at fair market value with a discount supply. And that's all contained in the proposed treasury regulations. There was no real substantial change, at least a relevant change, between the proposed regs and the final regs. And, of course, the court is able to review those and not necessarily take no word for it. It's all in there laid out, as well as the citations of the Kennedy case and the McDonald case are in the proposed regulations. If the court agrees that this property is to be taxed at fair market value, there really is no genuine issue material factor anymore. We've got two affidavits that set forth the value of the interest. They're uncontroverted. But the attorney general didn't go to their own merger expense like the estate did. They're trying to get an appraisal of what's this property worth. Do the discounts, are they too high, are they too low? The attorney general hasn't offered any of that evidence. They're essentially relying on their understanding of the Young case, which we don't believe applies. So the uncontroverted affidavits, no rulings were obtained on the motions to strike of the affidavit gift. And even if there was, there was no serious issue taken with the affidavit of Seth Baker. So we've got two affidavits that are uncontroverted. Any arguments against them have been forfeited because there's no ruling obtained in the transport. You can't try those issues for the first time in the field. So if we have an uncontroversial affidavit, it must be taken as true. And consequently, we've proven that the fair market value includes the 20% discounts here with two separate appraisers. And as a consequence, there's no genuine issue material. The fact judge, it must be granted as a matter of law. All that is set forth very clearly in the case law for the State of Illinois, cited in Collins' brief. I'm sorry, I can't recall this from memory. If there's no genuine issue material, in fact, we ask the court to simply appraise the land, value the land, and tax the land at what it's actually worth. Not any higher, like the Attorney General said. Counsel, I'm sorry, you're out of time. You will have additional time on rebuttal if you desire. Mr. Helix. Good morning, Your Honor. Ben Chase, the court. Assistant Attorney General Carl Helix for the Attorney General's Office. Your Honor, the question to this court is whether the estate tax can be harmonized with the disclaimer statute. As Your Honor asked, if Section 240 does apply, I think there's no dispute between us that Section 240 would require the entire value of the property to be included in the gross estate. It specifically says that. It says that any of the property that is held by the decedent and anyone else in joint tenancy is included in the gross estate. And this property was under this gap. The wrinkle here is in the disclaimer statute, which now provides that Mrs. Bailey was able to disclaim what they call the accrued portion of the estate for this particular farmland in three parcels. But there's nothing in the disclaimer statute that would tell the court that for purposes of assessing tax, there should be different treatment. Well, how do we reconcile this with the way it was treated for purposes of the federal return? The IRS just didn't audit this and agree that it was fine with the return, but that doesn't define the Attorney General's Office in any way. Taxes are different as far as we assess them, and the federal government decided not to audit. So what I'm getting at, though, is I got the impression from the briefs that basically our rules are formulated after or in conjunction with the federal rules, and so I'm wondering how do we get two different outcomes if they're supposedly similar? I don't believe the federal government ever said that this was the proper treatment for this return. They simply did not audit. So you're saying they didn't catch it, basically. They didn't catch it, and the state only did in its audit. We've called them on this, and they've offered this two-transfer theory to justify it, and I would suggest the two-transfer theory should have never been adopted, not only by Illinois courts, but just never been a court that I understand has adopted it. He cites the Kennedy case from the Seventh Circuit, which talked about how there's two transfers. That's true for purposes of figuring out disclaimers. We have no dispute about that. There is a disclaimer. The property is going to go to the widow and her daughters, but the question isn't really about disclaiming who's going to get the property and probate. The question is about how will it be taxed, and for that purpose, I don't think he's disagreeing at all with our argument that there's really no difference between state taxation and federal taxation with regard to this. Section 2040 looks to the property as it was in the hands of the decedent at the time he died, and there is this relation back under this disclaimer statute, but it's only for purposes, as the disclaimer statute says in Part D, that it's for purposes of distribution. So you heard counsel indicate that there's no controlling precedent here. How is it that this comes about here at this point in time as a case of first impression? What's new? What's new, and I think he said this, is that the bar that handles the state taxation has come to a theory that this is something that would work as far as changing how this works. These disclaimers are relatively new. He says it's the AG's position that's changed. The AG's position can be traced back to an Illinois Supreme Court case called Clouder in the 1950s. The Illinois Supreme Court made clear it could not sever in Illinois a joint tenancy once one of the joint tenants has died. That's Illinois common law. That's common law. That's Illinois law as decided by the Illinois Supreme Court. There's no court that I think he cited that has disagreed with even that principle. It is a new theory. It's in line with some of the logic of – his logic is that if there's a disclaimer, there must be a severance, okay? And that's – he's the first person that I've seen who said that other than scholarly treatment, which he cited in his brief. There's a law review article which states that argument, but it hasn't been adopted by the courts. And it would be very odd for this court to overturn by inference an Illinois Supreme Court decision that says you can't disclaim, you can't sever post-death. So I understand you're saying that this is well established, but has the attorney general taken a different position? Are you now looking at this, red-flagging these? I mean, has there been any change in enforcement? No. As I understand it, this is the first time this argument was made with regard to 2040 and 2033. This is the first time we've come to this. Otherwise, there would be some precedent here for me to cite, which we're not, other than for me to point to the language of the disclaimer statute, which I don't want to emphasize. Section D of that section of that act says, for purposes of distribution. In the most basic way possible, can you explain here right now why a fractional interest discount cannot be taken under these circumstances? Because by fiat, Congress has declared that the way we value this property is by looking at its value in the hands of the Supreme Court. In the hands of the deceitful, time of death, if joint tenancy ended, it was a fee simple at that moment. And there should not be a marketability discount for someone who owns a fee simple, no. Mrs. Bailey did then exercise her state statutory rights to disclaim, and this property stopped being a fee simple property, and it became, at that point, a tenancy in common with her daughter's. And we acknowledge that, and they can own this property in exactly that way. That's what the disclaimer statute does. It allows the property to be transferred, but it doesn't change the taxation of the property. And that's, I think, my simplest investor argument. We've mentioned treasury regulations. Our argument, as explained in the brief, is that they specifically talk about investment vehicles, and not real estate. So that wouldn't work. I think that's everything we have. Unless your honors have questions, I'll ask the court to confirm the circuit court's decision. And if they don't, we'll turn you in to the police. Thank you, counsel. Any rebuttal? Counsel, could you hold your rebuttal so that I can ask a question? I mean, please come forward. I'm going to ask you the question. Before you even get to start talking, I'm going to ask you a question. Thank you, Justice Holdenwhite. So, before we leave this point, we've got the issue. I inarticulately tried to ask this question earlier, and it was inarticulately asked, so I apologize for that. We have the issue of property distribution. We have the issue of tax property valuation. And the concern I had, counsel just essentially made the argument about the question I was trying to ask, and that is, where fee simple has transferred, what is your authority for taking this circumstances out of 2040? Where is the bear there with this disclaimer that takes it away from that evaluation for tax purposes, not distribution purposes, but for tax purposes? Three reasons. Okay. The first one would be the examples of the Treasury regulations 12 and 14 that say when a property is disclaimed, it's removed from 2040 and put into 2033. There's no distinction made for real estate. In fact, there's an example 7 for real estate. And if IRS wanted to make a different rule for real estate, it would have been so easy for them to say the interest continues to be taxed in 2040. It would be strange for them to intend for that and not specify a different result. The second reason is because the argument that Glenda and John owned a fee simple is not. . . At the time of the second transfer death, Glenda owns a fee simple. That's a theory. You will not find it in the case law. That is the argument proposed by counsel. It is not found in the statutes. Because of the relation back doctrine, by the time he died, Glenda isn't deemed to have received a fee simple interest. She never got anything. And there is a . . . The case directly on this point is an Arizona non-public decision. It's in our briefs. And it says that the disclaimer severs it so that it's a joint tenancy interest. And to tie that, then, into the federal state tax, this court has to look to Kennedy and McDonald. These are controlling cases in the federal state tax concept. It says that state law disclaimers relate back to before death. That's not just a rule for dissent distribution. It controls in the federal state context. You plead with the court to review those cases. It is an explicit holding. We're not bending those rules. And if those cases transfer that relation back doctrine to the federal state context, then the interest is not a fee simple. It is a . . . 2040 never even starts to apply because, at the moment of John's death, it is a tenancy in common interest and no longer a joint tenancy interest. What's the case? Black? Is it the Black case that's from Arizona? Ferguson is the first name. Oh, I'm sorry. Ferguson, yes. It is cited. It's cited in the youthment article. And the attorney general . . . First of all, it's not in the record anywhere that you'll find . . . We don't know that the IRS didn't examine this return, didn't look at it. To say that they missed it, that's an assumption, a self-serving assumption by the attorney general's office. You can't assume that the IRS isn't doing their job, not looking at the returns. They may have. They may not have. Yes, they may have missed it. But, most likely, the issue wasn't raised because it's not in their checklist. It's not something that they care about. The client's board that says the disclaimer can't be . . . I'm sorry. It says that a joint tenancy interest can't be severed after death. It doesn't touch on the issue of disclaimer. The disclaimer allows it to relate back. That completely changes the analysis. Why wouldn't that be . . . Why wouldn't that be important to this court to address the specific issue of the disclaimer? And why wouldn't that change the analysis? We believe that it does. And then, as far as, you know, the argument that this is something new . . . That the position that we're taking as a taxpayer is some sort of a tax-saving scheme . . . That no one else has thought of before. I guess I'm somewhat flattered, but we don't believe that that's really . . . We know that that's not the intention here. Glenda wanted her daughter to receive this property. That's why she disclaimed it. She wanted her daughter to get it, instead of her. That is a fair assumption to gather from the record. And Dukeman agrees with this. The practitioner in Florida agrees with this. You're not going to find anyone in the industry, cited in the record, that agrees with the Attorney General of the Trial Court. You know, if there's any authority that says that we're doing it the way it always was . . . Instead of the Attorney General's office. That's the only authority in the record that really shows that we're trying to carry it on fast. The Attorney General is the one that appears to have taken a position that's never been litigated before . . . Because it's counterintuitive and against a good policy. The taxes interest . . . It wasn't toward a fair market value. Not an artificially high value. And so, we are asking the court to overturn the motion for summary judgment. I'm sorry. To overturn the motion for summary judgment. And, we will consider these states. And, also acknowledge that the interest of these bodies is an asset for the community. Thank you, Counsel. We'll take this matter under advisement and be in recess until the next case.